KELLY JOHNSON
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

DAVID B. GLAZER
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Telephone:  (415) 744-6491

McGREGOR W. SCOTT
United States Attorney
EDMUND BRENNAN
Assistant United States Attorney
Eastern District of California
501 "I" Street, Suite 10-100
Sacramento, California 95814
Telephone:  (916) 554-2700

Attorneys for the United States of America

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ATLANTIC RICHFIELD COMPANY, )<br>)<br>Defendant. )<br>) | CIV. NO. S-05-00686 GEB-DAD<br><br>CONSENT DECREE |

## TABLE OF CONTENTS

I. BACKGROUND.................................................................................................2

II. JURISDICTION ..............................................................................................5

III. PARTIES BOUND ..........................................................................................5

IV. DEFINITIONS.................................................................................................5

V. PAYMENT OF FUTURE RESPONSE COSTS ...............................................8

VI. DISBURSEMENTS FROM ESCROW ACCOUNT ........................................9

VII. COVENANTS NOT TO SUE BY THE UNITED STATES ...........................11

VIII. COVENANTS BY SETTLING DEFENDANTS .........................................12

IX. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION.................13

X. CERTIFICATION ...........................................................................................15

XI. NOTICES AND SUBMISSIONS ...................................................................15

XII. EFFECTIVE DATE ......................................................................................17

XIII. RETENTION OF JURISDICTION.............................................................17

XIV. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT.................17

XV. SIGNATORIES/SERVICE ...........................................................................17

XVI. FINAL JUDGMENT ...................................................................................18

APPENDIX A ………………………………………………………………… 21

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the United States Department of Agriculture, Forest Service ("Forest Service"), has filed a complaint in this matter concurrently herewith, pursuant to Sections 104 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604, 9607.

B.      The United States in its complaint seeks, inter alia:  (1) reimbursement of costs incurred by the Forest Service at the Walker Tailings Site located in the Plumas National Forest, Plumas County, California ("Site"), together with accrued interest; and (2) performance of studies and response work by the defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      This Consent Decree is entered into under the authority vested in the President of the United States by Sections 104, 107, and 122 of CERCLA, 42 U.S.C. §§ 9604, 9607, 9622. The President's authority relative to this Site was delegated to the Secretary of the United States Department of Agriculture ("Secretary") by Executive Order 12580, 52 Fed. Reg. 2926 (Jan. 23, 1987).  The Secretary's authority was further delegated to the Chief of the Forest Service ("Chief") by 7 C.F.R. 23 § 2.60(a)(39).  The Chief redelegated the Secretary's authority to enter into this Consent Decree to the Forest Service Region 5.  Regional Forester ("Regional Forester") by letter dated April 14, 1997.  The Chief redelegated the Secretary's authority to issue a Record of Decision under CERCLA to the Regional Forester by Forest Service Manual Region 5 2164.04, 2b, effective November 10, 1994.  The Regional Forester redelegated the Secretary's authority to issue a Record of Decision under CERCLA to the Forest Service Region 5 Director of Engineering by Forest Service Manual – Region 5 Supplement 2164.04c-2b.

D.      The Site is located within Pacific Southwest Region 5, Plumas National Forest, Plumas County, California.  The Plumas National Forest is under the administrative jurisdiction of the Forest Service.

E.      The defendant does not admit any liability to the plaintiff arising out of the transactions or occurrences alleged in the complaint.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © JPMorgan Chase Bank 2001.  All Rights Reserved.*

#612001.1

F.     The Site was a tailings reservoir for mine and mill tailings from the Walker Mine, located on  private lands nearby.  Plaintiff alleges that the Walker Mine was owned and operated by the Walker Mining Company ("Walker") from approximately 1915 through 1941.  Plaintiff further alleges that the Walker Mine was also operated concurrently by the International Smelting Company and the International Smelting and Refining Company (collectively "International") and their parent corporation, the Anaconda Copper Mining Company, which subsequently changed its name to The Anaconda Company (collectively "Anaconda"), during most or all of its period of operation.  Plaintiff further alleges that tailings, as well as acid mine drainage, both of which contain hazardous substances, were released from the Walker Mine onto the Site during the time that the Walker Mine was operated by Walker and International, and that hazardous substances contained in the tailings on the Site and acid mine drainage from the Walker Mine continue to be released from the Site today.

G.     After the Walker Mine closed, International merged into Anaconda, and Anaconda merged into Atlantic Richfield Company ("Atlantic Richfield"). Settling Defendants deny that International, Anaconda or Atlantic Richfield engaged in any act or omission that would make them liable for hazardous substances released at or from the Walker Mine or the Site.

H.     In 1990, in response to a release or a substantial threat of a release of one or more hazardous substances at or from the Site, the Forest Service commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.     The Forest Service completed a Remedial Investigation ("RI") Report and a Feasibility Study ("FS") Report for the Site in August 1993.

J.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, the Forest Service published notice of the completion of the FS and of the proposed plan for remedial action, on September 17, 1993 and February 24, 1993, in major local newspapers of general circulation. The Forest Service provided an opportunity for written and oral comments from the State of California ("State") and the public on the proposed plan for remedial action.  A copy of the

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Forester based the selection of the response action.

K.      The decision by the Forest Service on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on June 10, 1994, and amended on August 2, 2001.  The State of California was given an opportunity to review and comment on the ROD and amended ROD and has concurred in the proposed remedial actions.

L.      The ROD selected the following preferred remedial alternative: treatment of the tailings material on-site, reconstruction of a portion of the Dolly Creek channel to stabilize it and revegetate its banks, construction of aerobic and anaerobic wetlands to act as a passive water treatment system to reduce the metals content of contaminated waters, construction of wind barriers to control erosion and air releases, and neutralization of 10 acres of tailings and revegetation of 60 acres of tailings to reduce acidity.  The amended ROD added the diversion of Dolly Creek around the tailings to ensure the effectiveness of the wetland treatment system and reduce releases of hazardous substances during heavy flows.  The amended ROD also contemplates the possible construction of a 15-acre passive water treatment system and the diversion of Little Grizzly Creek as contingent remedial actions, to be implemented as needed.

M.      Following issuance of the original ROD, the Forest Service completed construction of the aerobic wetland portion of the remedial action, using its own funding, together with other work to reduce erosion and wind dispersion of the tailings.  To date, the Forest Service alleges that it has expended approximately $1.24 million in response costs for Site investigation and engineering studies, construction of the aerobic wetlands and other work, and enforcement activities.  Under the amended ROD, the remaining work required at the Site includes the diversion of Dolly Creek, along with the possible construction of the passive water treatment system and diversion of Little Grizzly Creek.  Implementation of that work is projected to cost an estimated $2.09 million. With the estimated cost of 30 years of operation and maintenance of the remedial action, the future costs of work required by the amended ROD are expected to total approximately $3.3 million.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

N.      The Parties acknowledge that there are factual disputes with respect to the history of the Site, the condition of the Site, the remediation efforts, costs incurred in connection with the Site, and future remediation needs.  Without admitting or denying the facts in dispute, the Parties have agreed that it is in their best interests to resolve these disputes through this Consent Decree.

O.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9604, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of Settling Defendants including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the Settling Defendants' responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

meanings assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

"Consent Decree" shall mean this Consent Decree [and the appendix and other attachments hereto]. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

"CWA" shall mean the Clean Water Act, as amended, 33 U.S.C. § 1251, et seq.

"Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and any of its successor departments, agencies or instrumentalities.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments, agencies or instrumentalities.

"Escrow Account" shall mean the interest-bearing account established as a qualified settlement fund pursuant to Internal Revenue Code of 1986 § 468B, as amended, and Treasury Regulations promulgated thereunder.

"Escrow Agreement" is the instrument that establishes and governs the Escrow Account and is attached as Appendix A.

"Forest Service" shall mean the United States Department of Agriculture, Forest Service, and any of its successor departments, agencies or instrumentalities.

"Future Response Costs" shall mean all costs incurred, on or after the effective date of this consent Decree, in connection with the performance of environmental Response Actions by the United States or its designated contractor(s) at or in connection with the Site.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

"Natural Resource Damages" shall mean damages or other relief for injury to, destruction of, or loss of any and all Natural Resources, including the costs of assessing such injury, destruction or loss, and including interest and litigation costs.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs" shall mean all costs incurred prior to the effective date of this Consent Decree, in connection with the performance of environmental Response Actions by the United States or its designated contractor(s) at or in connection with the Site.

"Plaintiff" shall mean the United States of America.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Response Action" shall mean remove, removal, remedy and remedial action, as those terms are defined in Section 101 of CERCLA, 42 U.S.C. § 9601; all such terms (including the terms "removal action" and "remedial action") include enforcement activities related thereto.

"Response Costs" shall mean "Past Response Costs" and "Future Response Costs."

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean defendant Atlantic Richfield Company and its affiliate ARCO Environmental Remediation, L.L.C.

"Site" shall mean the Walker Mine Tailings Site, encompassing approximately 100 acres, located in the Plumas National Forest in Plumas County.

"United States" shall mean the United States of America, together with all departments and agencies thereof.

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

## V. <u>PAYMENT OF FUTURE RESPONSE COSTS</u>

4.        Within 30 business days after Settling Defendants receive notice that this Consent Decree has been lodged, Settling Defendants shall deposit the amount of $2.5 Million into an escrow account bearing interest on commercially reasonable terms, in a federally-chartered bank, which Settling Defendants shall qualify as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code § 468B (the "Escrow Account"), in payment for Future Response Costs to be incurred by the United States at or in connection with the Site. Notice that payment has been made shall be made pursuant to Section XI of this Decree (Notices and Submissions) and shall reference U.S. DOJ No. 90-11-2-1320 and the Forest Service Account number to be provided by the Forest Service. Such monies shall be disbursed from the Escrow Account pursuant to the terms of Section VI of this Decree.  The Forest Service has approved the Escrow Account as of the date that this Consent Decree is executed by a representative of the Forest Service, subject, however, to the Forest Service's further review of such approval in accordance with, and to the extent permitted by, Section XIV of this Consent Decree.  The Escrow Account also shall be subject to the continuing jurisdiction of the Forest Service in accordance with Section VI of this Consent Decree.  If this Decree is not entered by the District Court, and the time for any appeal of that decision has run, or if the District Court's denial of entry is upheld on appeal, the monies placed in escrow, together with accrued interest thereon, shall be returned to Settling Defendants.

5.        In the event that the payment required by the preceding Paragraph is not made as required, Settling Defendants shall pay Interest on the amount owing.  The Interest to be paid under this Paragraph shall begin to accrue thirty (30) days after the date payment was to be made and shall continue to accrue until payment is made. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Settling Defendants' failure to make timely payments under this Section. Settling Defendants shall make all payments required by this Paragraph in the manner described in the preceding Paragraph.  Any Interest payable under this Paragraph shall be paid into the Escrow Account.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

6.      In addition to Interest, if payment of any portion of the amount due under this Section is not made by the 30th day after the payment was due to be made, Settling Defendants shall pay a stipulated penalty of $1000 per day for each day the payment is late, until payment is made in full. Payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "U.S. Department of Justice" and delivered to the office of the United States Attorney, Eastern District of California, Financial Litigation Unit, 501 "I" Street, Suite 10-100, Sacramento, California 95814, along with a transmittal notice indicating that the payment is for stipulated penalties and referencing the Forest Service Account number provided, U.S. DOJ No. 90-11-2-1320, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XI (Notices and Submissions). Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by this Section or from performance of any other requirements of this Consent Decree.

## VI.  **DISBURSEMENTS FROM ESCROW ACCOUNT**

7.      The amount deposited in the Escrow Account pursuant to Section V of this Decree shall be disbursed, subject to the provisions of the following Paragraph, in accordance with escrow instructions executed by the Parties and the bank in which the Escrow Account is established. The Escrow Account shall be established prior to the lodging of this Decree, pursuant to an Escrow Agreement in substantially the form set out in Appendix A to this Decree.

8.      The Forest Service shall submit an application for payment of Future Response Costs ("Application"), on a semi-annual or quarterly basis, to implement the CERCLA response activities at the Site.  Such Application shall include documentation identifying each cost (actual or projected), including the amount incurred; the date incurred or to be incurred; the contractor or vendor performing the response activity, if applicable; and the items or services purchased or to

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

be purchased, if applicable.  In the case of intramural costs or activities, the Application shall provide documentation sufficient to identify such costs or activities as being associated with Site response actions.  The Application shall be submitted to the Escrow Agent for the Escrow Account, with a copy to Settling Defendants. Settling Defendants may, within 30 days of the Application's submission, serve an objection to the Application on the Forest Service, with a copy to the Escrow Agent, opposing the Application.  Such an objection shall be limited to opposing costs identified in the Application on the grounds that the costs requested in the Application:

(1) were not incurred at the Site, or

(2) are not Future Response Costs within the definition set out in Section IV of this Consent Decree.

9.       The Forest Service may thereupon withdraw or modify the Application.  If the Forest Service submits a modified Application,  Settling Defendants may treat it as an original Application and may serve an objection within 30 days of the Application on the grounds specified above.  In the case of any Application as to which an objection is pending, the Escrow Agent shall not make disbursement except in accordance with the following Paragraph.  Any pending objection to an Application shall be resolved by the Dispute Resolution provisions of this Paragraph.  If the Parties are unable to informally resolve the dispute within 15 days from the date the pending objection was submitted, the Forest Service may make a motion to the Court requesting that its application or modified application be approved. Settling Defendants may oppose that motion, pursuant to the Local Rules of Court.  In any such dispute brought to the Court, Settling Defendants shall bear the burden of demonstrating that the costs requested in the application:  (1) were not incurred at the Site, or (2) are not Future Response Costs within the definition set out in Section IV of this Consent Decree.

10.      By agreement of the Parties, and after payment has been made pursuant to Section V of this Decree, the escrow instructions governing disbursements from the Escrow Account may be modified by written agreement between the Parties and the bank in which the Escrow Account is established. Settling Defendants shall cooperate in the execution of such

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

documents as are necessary to effectuate such changes, provided that such changes do not affect the substantive rights of Settling Defendants with respect to the Escrow Account.

11.     The Forest Service shall use the funds in the Escrow Account to properly implement the ROD and any amendments to the ROD required to remediate current conditions at the Site.

## VII. COVENANTS NOT TO SUE BY THE UNITED STATES

12.     In consideration of the payment, covenants and other promises made by Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 13 of this Section, the Forest Service covenants not to bring suit for any and all claims within the scope of its authority for Response Costs, Response Actions, or Natural Resources Damages at or to address the Site. The United States specifically covenants not to sue or to take administrative action for any of the following actions relating to the Site:

(1)     injunctive relief, Response Actions, Response Costs, contribution, or other relief under Sections 106 (including, without limitation, claims for penalties under Section 106(b)), 107, and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613, or

(2)     common law and/or other statutory claims based upon any alleged failure of Settling Defendants or their predecessors to pay Response Costs, Conduct Response Actions or remediate conditions at the Site, or

(3)     any action under Section 7003 of RCRA, 42 U.S.C. § 6973.

Except as provided in Paragraph 13 of this Section, the covenants not to sue set forth in this Paragraph include both past and future liability for those claims enumerated above arising from or relating to all conditions at or in connection with the Site.  These covenants not to sue extend to the Settling Defendants, and to each such entity's respective officers, directors, and employees acting in their capacities as such.  These covenants not to sue also extend to Settling Defendants' parents, affiliates, successors and assigns, and to each such entity's respective officers, directors and employees acting in their capacities as such, but only to the extent their liability derives from Settling Defendants' potential liability and only to the extent such entities provide covenants not to sue identical to those provided by Settling Defendants pursuant to Section VIII of this Consent

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may be not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

Decree. These covenants not to sue shall take effect upon the payment in full of the amount due under Section V of this Consent Decree (Payment of Future Response Costs), provided that Settling Defendants remain in compliance with the terms of Section VI (Disbursements from Escrow Account) of this Consent Decree until the Escrow Account is closed.

13.     <u>General reservations of rights</u>. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 12. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all other matters, including, but not limited to, the following:

(1)     claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

(2)     criminal liability;

(3)     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments at the Site, on behalf of a federal agency other than the Forest Service;

(4)     liability based upon Settling Defendants' ownership or operation of the Site after signature of this Consent Decree; and

(5)     liability based upon Settling Defendants' transportation, treatment, storage, or disposal of, or arrangement for the transportation, treatment, storage, or disposal of, any hazardous substance or solid waste after signature of this Consent Decree.

14.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all Response Actions authorized by law.

## VIII.  <u>COVENANTS BY SETTLING DEFENDANTS</u>

15.     Except as specifically provided in Paragraph 17 of this Section, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site, Response Costs as defined herein, or this Consent Decree, including, but not limited to:

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

a.      any direct or indirect claim for reimbursement from the Hazardous

Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA,

42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.      any claim arising out of Response Actions at or in connection with the

Site, including any claim under the United States Constitution, the California State

Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act,

28 U.S.C. § 2412, as amended, or at common law; or

c.      any claim against the United States pursuant to Sections 107 and 113 of

CERCLA, 42 U.S.C. §§ 9607 and 9613, in connection with the Site.

16.     Nothing in this Consent Decree shall be deemed to constitute approval or

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or

40 C.F.R. 300.700(d).

17.     <u>General Reservation of Rights by Settling Defendants</u>. The Settling Defendants

reserve any defenses to any order or claim brought by the United States pursuant to the

reservations contained in Paragraph 13. In addition, the Settling Defendants reserve any cross-

claims, counterclaims, or third-party claims against the United States in response to any claims

brought by the United States against the Settling Defendants pursuant to the reservations

contained in Paragraph 13.

## IX.<u>EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION</u>

18.     Nothing in this Consent Decree shall be construed to create any rights in, or grant

any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence

shall not be construed to waive or nullify any rights that any person not a signatory to this decree

may have under applicable law.  Settling Defendants expressly reserve any and all rights

(including, but not limited to, any right to contribution), defenses, claims, demands, and causes

of action that it may have with respect to any matter, transaction, or occurrence relating in any

way to the Site against any person not a Party hereto.

19.     The Parties agree, and by entering this Consent Decree this Court finds, that

Settling Defendants are entitled, as of the effective date of this Consent Decree, to protection

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

from costs, damages, actions, or other claims (whether seeking contribution, indemnification, or however denominated) for matters addressed in this Consent Decree as provided by (1) CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and (2) any other applicable law. The "matters addressed" in this Consent Decree are all Response Actions taken or to be taken and all Response Costs incurred or to be incurred by the United States or any other person with respect to the Site, and specifically include without limitation those matters governed by the covenants contained in Sections VII and VIII of this Consent Decree. The "matters addressed" in this Consent Decree shall not include those Response Costs or Response Actions as to which Plaintiff has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that Plaintiff asserts against Settling Defendants rights coming within the scope of such reservations.

20.     Settling Defendants agree that, with respect to any suit or claim for contribution brought by them  for matters related to this Consent Decree, Settling Defendants will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim.

21.     Settling Defendants also agree that, with respect to any suit or claim for contribution brought against them  for matters related to this Consent Decree, Settling Defendants will notify the United States in writing within ten (10) days of service of the complaint on Settling Defendants.  In addition, Settling Defendants shall notify the United States within ten (10) days of service or receipt of any motion for summary judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

22.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of Response Costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue or claim preclusion, claim splitting, or any other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section VII (Covenants Not to Sue by the United States).

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

## X.  CERTIFICATION

23.     Settling Defendants hereby certify that, to the best of their knowledge and belief, after thorough inquiry, they have  not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to their  potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against them  regarding the Site and that they have  fully complied with any and all Forest Service requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e), 9622(e).

## XI.  NOTICES AND SUBMISSIONS

24.     Unless otherwise specified in this Consent Decree, whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and Settling Defendants.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
6 Ben Franklin Station
Washington, D.C.  20044
        Re:  DJ # 90-11-2-1320

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

David B. Glazer
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105

      and

Rose Miksovsky
Office of the General Counsel
33 New Montgomery Street, 17th Floor
San Francisco, California  94105

As to the Forest Service:

Dennis Geiser
Regional Environmental Engineer
Forest Service, Pacific Southwest Region
1323 Club Drive
Vallejo, California  94592

As to Settling Defendants:

Jean A. Martin
Environmental Counsel
Atlantic Richfield Company
6 Centerpointe Drive, 5th Floor
La Palma, CA  90623

Michael J. Gallagher
Davis Graham & Stubbs LLP
1550 Seventeenth Street, Suite 500
Denver, CO  80202

Robin J. Bullock
Regional Manager
Atlantic Richfield Company
317 Anaconda Road
Butte, Montana   59701

Mark Brekhus
Regional Manager
Atlantic Richfield Company
6 Centerpointe Drive, 1ST Floor
La Palma, CA  90623

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

## XII.  EFFECTIVE DATE

25.     The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XIII.  RETENTION OF JURISDICTION

26.     This court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XIV.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

27.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

28.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XV.  SIGNATORIES/SERVICE

29.     The undersigned representative of Settling Defendants, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the Regional Forester, Region 5, Forest Service certify they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind Settling Defendants and the United States, respectively, to this document.

30.     Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

31.     Settling Defendants shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Settling Defendants with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendants need not file an answer to the Complaint in this Action unless or until thirty days after the Court expressly declines to enter this Consent Decree.

## XVI.  <u>FINAL JUDGMENT</u>

32.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and the Settling Defendants, and among other things, resolves all claims filed in the above-captioned cases between and among those Parties. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58

33.     <u>Retaining Jurisdiction.</u> The Court shall retain jurisdiction over this case, until termination of this Consent Decree, to resolve disputes arising under the Consent Decree, enter orders modifying the Consent Decree, and effectuate and enforce compliance with the terms of the Consent Decree.

SO ORDERED.


DATED:  6/13/2005

_____/s/ Garland E. Burrell, Jr._____

GARLAND E. BURRELL, JR.
United States District Judge

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v</u> <u>ATLANTIC RICHFIELD COMPANY</u>, relating to the Walker Mine Tailings Site.

FOR THE UNITED STATES OF AMERICA

Date:  April 8, 2005

KELLY JOHNSON
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

/s/_____
DAVID B. GLAZER
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105

/s/_____
KENT CONNAUGHTON
Deputy Regional Forester, for
JACK BLACKWELL
Regional Forester
U.S. Department of Agriculture
Forest Service
1323 Club Drive
Vallejo, California  94592

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. ATLANTIC RICHFIELD COMPANY, relating to the Walker Mine Tailings Site.

FOR THE ATLANTIC RICHFIELD COMPANY AND ARCO ENVIRONMENTAL REMEDIATION, L.L.C.

Date:  January 18, 2005

/s/_____
Luke Keller
 President of Operations, The Americas
Atlantic Richfield Company
21800 Torch Parkway
Warrenville, IL  60555

/s/_____
Jean A. Martin
Environmental Counsel
Atlantic Richfield Company
6 Centerpointe Drive
5th Floor
Palma, CA  90623

/s/_____
Michael A. Gallagher
Davis Graham & Stubbs LLP
1550 Seventeenth Street
Suite 500
Denver, CO  80202

Agent Authorized to Accept Service of Complaint, Consent Decree and pleadings and orders related to entry of the Consent Decree on Behalf of Above-signed Parties:

Name:   Jean Martin
Title:   Environmental Counsel
Address:6 Centerpointe Drive, LPC 6-557
Tel. Number:714-228-6736

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

## APPENDIX A

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

## FIRST AMENDED WALKER MINE ESCROW AGREEMENT

This First Amended Escrow Agreement (the "Escrow Agreement") dated as of the effective date (the "Effective Date") set forth on schedule 1 attached hereto ("Schedule 1") is made by and among Atlantic Richfield Company (the "Company") and the United States Department of Agriculture, Forest Service (the "Forest Service") (collectively, the "Parties"), the administrator identified on Schedule 1 (the "Administrator"), and JPMorgan Chase Bank, N.A. as escrow agent hereunder  (the "Escrow Agent").

**WHEREAS**, the Parties entered into a Consent Decree ("Consent Decree") to resolve alleged liability for remediation of the Walker Mine Tailings Site located in the Plumas National Forest, Plumas County, California ("Site").

**WHEREAS**, pursuant to the Consent Decree, the Company has agreed  to make certain contributions to a settlement fund to be held in escrow pending its release in accordance with the Consent Decree.

**WHEREAS**, the Parties and the Escrow Agent now desire to enter into this Escrow Agreement to provide for and to evidence their mutual agreement with respect to the holding and maintenance of the settlement fund in escrow.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.        **Appointment**.  The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.        **Settlement Fund.**  The Company shall pay to the Escrow Agent for deposit the amount described in the Consent Decree.  The Escrow Agent has has the right to assume that any deposit received by it pursuant to the terms of this Escrow Agreement is proper and shall not be required to inquire into the adequacy, sufficiency or propriety of any such deposit.  The Escrow Agent shall have no duty to solicit any deposits that may be due to it under the terms of this Escrow Agreement or the Settlement Agreement.  All deposits received pursuant to this Section 2 shall hereinafter be referred to as the "Escrow Deposit."  The Escrow Agent shall hold the Escrow Deposit and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Settlement Fund") as directed in Section 3.

**3.**    **Investment of Settlement Fund.**  During the term of this Escrow Agreement, the Settlement Fund shall be invested and reinvested by the Escrow Agent in the investment indicated on Schedule 1 or such other investments as shall be directed in writing by the Parties and as shall be acceptable to the Escrow Agent. Following the Escrow Deposit, the Escrow Agent will invest these Settlement Fund in investments limited to the following;

a.    Obligations issued or granted by the United States, or any money fund which invests solely in the foregoing obligations;

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

      b.   Any obligations issued or guaranteed by any state or municipality in the United States that is rated AAA by Standard & Poor's, or Aaa by Moody's Investors Service, at the time of investment;

      c.   Any corporate bonds with an investment grade credit rating of AAA by Standard & Poor's, or Aaa by Moody's Investors Service, at the time of the investment;

      d.   Certificates of deposit of, accounts with repurchase obligations of, or money funds or other obligations of banks or of corporations endowed with trust powers having capital and surplus in excess of $100,000,000; and

      e.   Certificates of deposit of, accounts with, or other obligations of any bank or corporation endowed with trust powers provided that the full amount of any such certificate of deposit, account, or other obligations is insured by FDIC or FSLIC.

The Settlement Fund shall not be invested in any other manner without the prior written instruction of the Forest Service. All investment orders involving U.S. Treasury obligations, commercial paper and other direct investments will be executed through JPMorgan Fleming Asset Management (JPMFAM), in the investment management division of JPMorgan Chase. Subject to principles of best execution, transactions are effected on behalf of the Settlement Fund through broker-dealers selected by JPMFAM.  In this regard, JPMFAM seeks to attain the best overall result for the Settlement Fund, taking into consideration quality of service and reliability. An agency fee will be assessed in connection with each transaction. Periodic statements will be provided to the Parties and the Administrator reflecting transactions executed on behalf of the Settlement Fund.  The Parties and the Administrator, upon written request, will receive a statement of transaction details upon completion of any securities transaction in the Settlement Fund without any additional cost. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.  The Escrow Agent shall have no liability for any loss sustained as a result of any investment in an investment indicated on Schedule 1 or any investment made pursuant to the instructions of the parties hereto or as a result of any liquidation of any investment prior to its maturity or for the failure of the parties to give the Escrow Agent instructions to invest or reinvest the Settlement Fund.

4.        **Settlement Fund Separate**.  The Escrow Agent shall at all times hold the Settlement Fund wholly segregated from all other funds and securities deposited with or held by the Escrow Agent.  The Escrow Agent shall not commingle the Settlement Fund with any other assets of the Escrow Agent.  The Escrow Agent shall hold and dispose of the Settlement Fund only as set forth herein. The Settlement Fund shall always be maintained by the Escrow Agent in accordance with the terms of this Escrow Agreement and the Settlement Fund shall at all times be maintained on the books of the Escrow Agent as a special account evidencing such facts. The Escrow Deposit received by the Escrow Agent under this Escrow Agreement shall not be considered as a banking deposit or be subject to checks or drafts drawn by the Parties, and the Escrow Agent shall have no right or title with respect to the Settlement Fund except as Escrow Agent under the terms hereof.  The Escrow Agent shall neither make nor permit any disbursement from the Settlement Fund except as directed in writing and as expressly provided herein.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

5.         **Title to Settlement Fund**. Prior to the termination of this Escrow Agreement, the Company shall not have legal title to the Settlement Fund.  Title to the Settlement Fund shall be held by the Escrow Agent in its capacity as such.

6.         **Distribution of Settlement Fund**.  The Settlement Fund shall be distributed to the Forest Service in accordance with this Escrow Agreement.  The Escrow Agent shall disburse the Settlement Fund semi-annually or quarterly, as applicable, upon application of the Forest Service made pursuant to the Disbursement Request Application ("Attachment 1"), for the purpose of paying the Forest Service for future Response Costs, as defined in the Consent Decree.  The Forest Service representative with authority to make such application shall be the Forest Service Pacific Southwest Region's Regional Engineer ("Regional Engineer").  The Escrow Agent shall make the requested disbursement 30 days after receipt of such Disbursement Request Application, unless the Company submits an Objection to the Disbursement Request Application ("Attachment 2") within such 30 day period.  If, upon the Company's objection made pursuant to this Section, the Forest Service withdraws its Disbursement Request Application, the Escrow Agent shall make no disbursement; if the Forest Service modifies its Disbursement Request Application (and the Company does not object to the modified Disbursement Request Application within 30 days of its resubmission), the Escrow Agent shall make disbursement as requested by the modified Disbursement Request Application.  If any objection remains pending as to a Disbursement Request Application or modified application, the Escrow Agent shall make disbursement only in accordance with a judicial determination.  If funds remain in the Settlement Fund after all Future Response Costs have been reimbursed, the Settlement Fund shall be disbursed to the Company.  If one or both of the Parties elect to terminate the Consent Decree pursuant to Section 28 of the Consent Decree, then all funds in the Settlement Fund shall be promptly returned to the Company.  If the United States elects to withdraw its consent to the Consent Decree pursuant to Section 27 of the Consent Decree, then all funds in the Settlement Fund shall be promptly returned to the Company. At any point when the Settlement Fund is only sufficient to pay fees and taxes on interest accruals, the Escrow Account shall be closed after payment of such fees and taxes.

7.         **Termination.**  After receipt of notice from the Escrow Agent that all claims have been paid and disbursement in full of the Settlement Fund pursuant to the provisions of Section 6 hereof, this Escrow Agreement shall terminate, subject, however, to the provisions of Section 13. Upon the taking of all actions as described by this Escrow Agreement, the Escrow Agent shall have no further obligations or responsibilities hereunder to the parties hereto or to any other person or persons in connection with this Escrow Agreement.  The Escrow Agent may dispose of any records or reports concerning the Settlement Fund and any transactions relating to such account in accordance with the Escrow Agent's established procedures, but only upon 30 days prior written notice to the Parties and the Administrator.

8.         **Escrow Agent**.  The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement.  The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

parties.  The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document.  The Escrow Agent shall have no duty to solicit any payments which may be due it or the Settlement Fund.  The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to the Parties or the Administrator. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys (and shall be liable only for the careful selection of any such agent or attorney) and may consult with counsel, accountants and other skilled persons to be selected and retained by it.  The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.  In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by all of the other parties hereto or by a final order or judgment of a court of competent jurisdiction.  Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

9.         **Removal or Resignation of Escrow Agent.**  The Escrow Agent may resign without obtaining the order of any court, by giving at least 30 days' prior written notice (unless waived) to the Parties and the Administrator.  The Parties may remove the Escrow Agent only with the consent of each other at any time for any reason or for no reason by giving written notice thereof to the Escrow Agent at least 10 days prior to the date specified for such removal to take effect.  If either of the Parties wishes to remove the Escrow Agent for good cause, it shall notify the other in writing of the reasons for such proposed removal, whereupon consent to such removal shall not be unreasonably withheld.  On or before the effective date specified for resignation or removal of the Escrow Agent, the Parties shall appoint a successor Escrow Agent by a written instrument.  The Company shall be deemed to have consented to such removal and appointment if the party receiving the notice fails to object to the removal or appointment within 5 days after having received notice from the other of its intent to replace the Escrow Agent.  Such resignation or removal shall be effective upon the appointment of a successor Escrow Agent pursuant to the provisions hereof.  Any successor Escrow Agent shall be a bank domiciled in the United States of America and having combined capital and surplus of at least $500,000,000.  Any successor Escrow Agent appointed under the provisions of this Escrow Agreement shall have all of the same obligations, rights, powers, privileges, immunities and authority with respect to the matters contemplated herein as are granted herein to the original Escrow Agent.  Upon the effective date of any resignation or removal of an Escrow Agent, all fees and expenses owed to the retiring Escrow Agent shall be paid from the Settlement Fund and the Settlement Fund shall be delivered by the retiring Escrow Agent to the successor Escrow Agent, whereupon all of the retiring Escrow Agent's obligations hereunder shall cease and terminate.  The indemnities contained herein in favor of the retiring Escrow Agent, its officers, directors and employees (or any of them) shall survive with respect to events or circumstances occurring prior to such resignation or removal.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

10.        **Merger**.  Any corporation or association  into which the Escrow Agent may be merged or converted or with which it may be consolidated or any corporation or association to which all or substantially all the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

11.        **Fees**.  The Parties agree jointly and severally to (i) pay the Escrow Agent upon execution of this Escrow Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 1 attached hereto, and (ii) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, execution, performance, delivery, modification and termination of this Escrow Agreement. Such compensation shall be billed to the Parties and shall be paid from amounts on deposit in the Settlement Fund.  For services other than those described in the fee schedule, and as to which the parties have not agreed, the Escrow Agent shall be entitled to such compensation as may be allowed by the court.

12.        **Records and Reports**.  The Escrow Agent will keep books of record and account in which complete entries shall be made of all transactions relating to the receipts, disbursements and investment of the Settlement Fund, and such books shall be available for inspection at reasonable hours and under reasonable conditions by the parties hereto.

13.        **Indemnity.**  The Company shall defend and indemnify, and the Parties shall jointly and severally  hold harmless, the Escrow Agent and its directors, officers, agents and employees (the "indemnitees") from all loss, liability or expense (including the fees and expenses of in house or outside counsel) arising out of or in connection with (i) the Escrow Agent's execution and performance of this Escrow Agreement, except in the case of any indemnitee to the extent that such loss, liability or expense is due to the gross negligence or willful misconduct of such indemnitee, or (ii) its following any instructions or other directions from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Escrow Agreement. The parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in the Settlement Fund for the payment of any claim for indemnification, compensation, expenses and amounts due hereunder.

14.        **Attachment of Settlement Fund**.  It is the intent of the Parties that the Settlement Fund not be subject to attachment, garnishment or levy by creditors of the Company. However, if the Settlement Fund is at any time attached, garnished or levied upon or under any court order, or in case the payment or transfer of the Settlement Fund shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting the Settlement Fund or a portion thereof, then in any of such events the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree that it is advised by legal counsel of its own choosing as binding upon it under the terms of this Escrow Agreement or otherwise.  To the extent practicable, the Escrow

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

Agent shall provide the Parties and the Administrator prompt notice of any such court order prior to taking any action thereon. If the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to the other parties to this Escrow Agreement or to any other person by reason of such compliance, even though such order, writ, judgment or decree may subsequently be reversed, modified, annulled, set aside or vacated.

15.         **Taxes.** The Settlement Fund is to be treated for federal income tax purposes as a qualified settlement fund within the meaning of U.S. Department of Treasury ("Treas.") Reg. § 1.468B-1. The Administrator shall be the "administrator" (as that term is used in Treas. Reg. §1.468B-2(k)(3)) of the Settlement Fund and as such will file such federal, state or local returns, pay such federal, state or local taxes, comply with applicable federal, state or local information reporting requirements and otherwise generally comply with the rules and regulations applicable to qualified settlement funds under Treas. Reg. § 1.468B-1 and relevant provisions of state and local tax law. The Administrator is explicitly authorized to use the assets of the Settlement Fund (i) to satisfy such federal, state and local taxes as may be due with respect to the Settlement Fund and (ii) to reduce the amount of any payments under this Escrow Agreement by taxes paid or which the Administrator reasonably concludes may become payable. The Company will comply with the provisions of the U.S. Department of Treasury Regulations applicable to the transferor to a qualified settlement fund and the Administrator will comply with its duties and obligations under the Reg. §1.468B rules.

The Administrator, and, as required, the Company, shall jointly and timely make (or cause to be jointly and timely made) the "relation-back election" (as defined in Treas. Reg. § 1.468-1B) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations (or any successor regulations). It shall be the responsibility of the Administrator to timely and properly prepare, and deliver the necessary documentation (including but not limited to the disclosures and elections referred to above) for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

The parties hereto acknowledge that the Administrator shall not be held accountable for any fines, penalties or interest associated with late filings as a result of the failure or refusal of others to cooperate with the Administrator causing such filings to occur on a timely basis. The Administrator may retain or hire a qualified third party or parties ("Qualified Third Party") to perform any of its duties or responsibilities specified herein or in Treas. Reg. § 1-468B-2. The fees or costs of such Qualified Third Party shall be billed to the Administrator and shall be paid from amounts on deposit in the Settlement Fund in accordance with the provisions of Section 11 hereof.

The Escrow Agent shall have no duty to comply with the provisions of Treasury Reg. § 1.468B, cited above. Furthermore, the Escrow Agent shall not be deemed to have any knowledge or responsibility concerning the applicability of such regulation to the transactions contemplated by this Agreement.

16.         **Notices.** All communications hereunder shall be deemed to be duly given and received:
    (i) upon delivery if delivered personally or upon confirmed transmittal if by facsimile;
    (ii) on the next Business Day (as hereinafter defined) if sent by overnight courier; or

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

(iii) four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth on Schedule 1 or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to (ii) and (iii) of this Section 16, such communications shall be deemed to have been given on the date received by the Escrow Agent. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. "Business Day" shall mean any day other than a Saturday, Sunday or other day on which the Escrow Agent located at the notice address set forth on Schedule 1 is authorized or required by law or executive order to remain closed.

17.       **Security Procedures.**   In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by telecopier or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on schedule 2 hereto ("Schedule 2"), and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by the Parties or the Administrator to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank.  The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even where its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated.  The parties to this Escrow Agreement acknowledge that these security procedures are commercially reasonable.

18.       **Miscellaneous.**   The provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by all of the parties hereto.  Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by any party, except as provided in Sections 9 and 10, without the prior consent of the other parties.  This Escrow Agreement shall be governed by and construed under the laws of the State of California.  The Company irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds, and waives any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Escrow Agreement.  The Parties irrevocably consent to service of process by mail or in any other manner permitted by applicable law, except that service of process on the United States shall be effected in accordance with applicable law.  The Parties other than the United States consent to the jurisdiction of the courts located in the State of California; jurisdiction over the United States shall be governed by applicable law.  No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, floods, strikes, equipment or transmission failure, or other causes reasonably beyond its control.  This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed this Escrow Agreement as of the date set forth in Schedule 1.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

**JPMORGAN CHASE BANK, N.A.**
**as Escrow Agent**


By:__/s/_____
      **ROLA TSENG**
      **Assistant Vice President**


**ATLANTIC RICHFIELD COMPANY**

By:__/s/_____
      **JOSEPH E. WEHR, CONTROLLER**


**EHRHARDT KEEFE STEINER & HOTTMAN**
**as Administrator**

By:__/s/_____
      **ROBERT B. HOFFMAN**



**UNITED STATES**
**DEPARTMENT OF AGRICULTURE**
**FOREST SERVICE**


By:__/s/_____
      **KENT CONNAUGHTON**
      Deputy Regional Forester

*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © The JPMorgan Chase Bank 2001. All Rights Reserved.*

Schedule 1

**Effective Date:**

**Name of Company:**          **Atlantic Richfield Company**
Company Notice Address:          6 Centerpointe Drive, 5th Floor, Palma, CA  90623

**Name of Administrator:**          **Ehrhardt Keefe Steiner & Hottman**
Administrator Notice Address:     7979 E. Tufts Avenue, Suite 400 · Denver, Colorado
     80237-2843

**Name:**          **United States Dept of Agriculture, Forest Service, Pacific Southwest Region**
Notice Address:          1323 Club Drive, Vallejo, California  94592

**Investment:**                    [specify]

[ ]  Obligations issued or granted by the United States, or any money fund which invests solely in the foregoing obligations;

[ ]  Any obligations issued or guaranteed by any state or municipality in the United States that is rated AAA by Standard & Poor's, or Aaa by Moody's Investors Service, at the time of investment;

[ ]  Any corporate bonds with an investment grade credit rating of AAA by Standard & Poor's, or Aaa by Moody's Investors Service, at the time of the investment;

[ ]  Certificates of deposit of, accounts with repurchase obligations of, or money funds or other obligations of banks or of corporations endowed with trust powers having capital and surplus in excess of $100,000,000; and

[ ]  Certificates of deposit of, accounts with, or other obligations of any bank or corporation endowed with trust powers provided that the full amount of any such certificate of deposit, account, or other obligations is insured by FDIC or FSLIC.

The Funds shall not be invested in any other manner without the prior written instruction of the Forest Service.  Absence of any written instructions , the Funds shall be invested in a Trust Account with the JPMorgan Chase Bank, N.A.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

**Escrow Agent notice address:**    JPMorgan Chase Bank
Institutional Trust Services
4 New York Plaza – 21st Floor
NY, NY 10004
Attention:  Sandra Frierson
Fax No.: 212.623.6168

**Escrow Agent's compensation:    $5,000 per annum without pro-ration for partial years.**

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied,
published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The
JPMorgan Chase Bank 2001.  All Rights Reserved.*

**Schedule 2**

**Telephone Number(s) for Call-Backs and**
**Person(s) Designated to Confirm Funds Transfer Instructions**

If to the Company:

|     | Name             | Telephone Number  |
| --- | ---------------- | ----------------- |
| 1.  | Jean A. Martin   | (714) 228-6736    |
| 2.  | Robert Chetwood  | (714) 228-6704    |
| 3.  | Dave McCarthy    | (406) 782-9964    |

If to the Forest Service:

|     | Name                        | Telephone Number            |
| --- | --------------------------- | --------------------------- |
| 1.  | _____     | _____     |
| 2.  | _____     | _____     |
| 3.  | _____     | _____     |

Telephone call-backs shall be made to each appropriate party if more than one party's instructions are required pursuant to this Escrow Agreement.

*This document contains information that is confidential and the property of JPMorgan Chase Bank.  It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank.  © The JPMorgan Chase Bank 2001.  All Rights Reserved.*

## Attachment 1

Disbursement Request Application

Application Date: _____

Check One:

q  Original Application

q  Modified Application. Original Application Date:

Application Quarter: _____

Applicant: _____

Summary of Response Costs Incurred or to be Incurred[1]:

| Response Activity | Cost Incurred or to be Incurred | Date of Activity | Service / Item Purchased or to be Purchased | Contractor / Consultant / Vendor |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

---

[1] **Documentation of the costs incurred or to be incurred for each activity is attached.**
*This document contains information that is confidential and the property of JPMorgan Chase Bank. It may not be copied, published or used, in whole or in part, for any purpose other than as expressly authorized by JPMorgan Chase Bank. © JPMorgan Chase Bank 2001. All Rights Reserved.*

#612001.1

**Attachment 2**

Objection to Request for Disbursement

Original Application Date:          _____

Application Quarter:          _____

Original Applicant:          _____

Settling Defendants object to the following Response Costs:

| Response Activity or Service / Item | Cost Incurred or to be Incurred | Date of Activity | Contractor / Consultant / Vendor | Objection |
|---|---|---|---|---|
| | | | | ❑ costs not incurred at Site  ❑ costs are not Future Response Costs |
| | | | | ❑ costs not incurred at Site  ❑ costs are not Future Response Costs |
| | | | | ❑ costs not incurred at Site  ❑ costs are not Future Response Costs |
| | | | | ❑ costs not incurred at Site  ❑ costs are not |

| | | | | Future Response Costs |
|---|---|---|---|---|